FILED
2019 Dec-02  PM 06:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARLOS PADILLA, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **2:17-cv-01826-MHH** |
| | ) | |
| **REDMONT PROPERTIES, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR RELIEF FROM JUDGMENT OR ORDER
## AND BRIEF IN SUPPORT

**COMES NOW**, Plaintiff, Carlos Padilla ( "Mr. Padilla") by and through attorney Freddy Rubio and moves this Court, pursuant to Federal Rules of Civil Procedure, 60(b)(3), 60(b)(6) and/or 60(d)(3), to modify the Final Order entered, pursuant to this Court's November 30, 2018, Memorandum Opinion [Doc. 35] and further states as follows:

### Introduction

This federal litigation[1] arose from a dispute between Mr. Padilla and his former employer. There was one individual defendant along with several corporate

---

[1] *Carlos Padilla, Jorge Ortiz, and Demetrio Padilla v. Redmont Properties, LLC, Redmont Prperties, E.G., LLC. Redmont Properties of Homewood, LLC, Fred G. Nunnelley III, and RM Management, LLC*, Case No.: 2:17-cv-001826-MHH in the United Stated District Court for the Northern District of Alabama.

defendants. (collectively "Redmont Properties"). The claims originated from Mr. Padilla's employment and were asserted under the Fair Labor Standards Act ("FLSA") and Title VII – Discrimination. Mr. Padilla was represented by Vicente Bonet-Smith of Bonet & Smith, P.C. ("Bonet & Smith"). The Parties reached a settlement of the FLSA claims and petitioned this Court to approve the proposed settlement. This Court, consistent with applicable case law, scrutinized the FLSA settlement, including the requested attorney's fees of $8,000.00 to Vicenta Bonet-Smith. The attorneys' fees were paid by the Defendant Redmont Properties, pursuant to this Court's order. However, following this Court's Memorandum Order, Bonet & Smith charged an additional 45 percent contingency fee to Mr. Padilla from his FLSA recovery for unpaid wages. This additional attorney's fee was in addition to the reasonable attorney's fees requested and approved by this Court. Contrary to applicable standards that require the settlement, including attorneys' fees, be scrutinized, the additional contingency fee was suppressed from the Court. Bonet & Smith's failure to disclose this crucial information was a fraud on, or a misrepresentation to, the Court.

### Facts and Procedural History

1.   On June 23, 2017, Mr. Padilla signed a contract with Bonet & Smith where Bonet & Smith agreed to represent Mr. Padilla for labor related issues against Redmont Properties. *See* Exhibit "A".

2.     On October 30, 2017, Bonet & Smith filed a one-count lawsuit in the Northern

District of Alabama alleging a violation of FLSA, which was assigned to this

Court. [Doc. 1].

3.     On January 31, 2018, an Amended Complaint was filed, which added a Title

VII – Discrimination Count. [Doc. 17].

4.     On March 6, 2018, Bonet & Smith filed its Second Amended Complaint,

adding two Plaintiffs - Jorge Ortiz and Demetrio Padilla. [Doc. 28].

5.     On April 5, 2018, this Court entered the following text order:

> The parties have notified the Court that they are finalizing a
> settlement to resolve the plaintiffs' FLSA claims against
> Redmont Properties. On or before May 7, 2018, the parties shall
> submit for court approval a proposed settlement agreement
> pertaining to the plaintiffs' FLSA claims against Redmont. The
> Court STAYS all other pending deadlines in this case.

[Doc. 31].

6.     On April 26, 2018, Mr. Padilla signed a "Confidential General Release and

Settlement Agreement" for the Title VII – Discrimination case. *See* Exhibit

"B".

7.     The salient portions of the Title VII – Discrimination Settlement Agreement

read as follows:

> **Monetary Payment.** Within fourteen (14) calendar days after
> the satisfaction of the conditions precedent identified in
> paragraph 5, Defendants will, at a mutually convenient time,
> deliver to Plaintiff's attorney, Vicenta Bonet-Smith, the agreed
> upon total settlement amount of $109,339.22, paid as follows: (1)

one check made payable to "Carlos Padilla" for claimed benefits in the amount of Ten Thousand Dollars and No/100 ($10,000.00), minus applicable tax withholdings; (2) one check made payable to "Carlos Padilla" for claimed compensatory and emotional distress damages in the amount of Twenty Thousand Five Hundred Eighty-Nine Dollars and 22/100 ($20,589.22), with no taxes or withholdings applied; <u>and (3) one check for claimed attorneys' fees and costs made payable to "Bonet & Smith, P.C." in the amount of Seventy-Eight Thousand Seven-Hundred and Fifty Dollars and 00/100 ($78,750.00), with no taxes or withholdings applied.</u> *See* Exhibit "B".

8. The parties agreed to resolve the Title VII – Discrimination Count for $109,339.22. *See* Exhibit "B".

9. As a result of that settlement, a check was sent, payable to Bonet & Smith, for $78,750.00, with the balance of the settlement payable to Mr. Padilla. *See* Exhibit "B".

10. By this date, Bonet & Smith had already calculated its attorney's fee at 45% of the total recovery, which improperly included the FLSA settlement amount, which had not yet received Court approval.

   a. The Title VII – Discrimination recovery totaled $109,339.22.

   b. The FLSA recovery totaled $65,660.78.

   c. The total of both recoveries was $175,000.00 ($109,339.22 plus $65,660.78).

   *See* Exhibit "B".

4

11.  Bonet & Smith charged 45% contingency fee on the total of both recoveries. Stated differently, Bonet & Smith charged forty-five percent of $175,000.00 or $78,750.00. *See* Exhibit "B".

12.  On May 3, 2018, the parties filed a Joint Motion for Approval of FLSA Settlement Agreement and Dismissal of Case (hereinafter "Joint Motion"). [Doc. 32].

13.  The Joint Motion states, in part, as follows:

> As demonstrated by the fact that Defendants have agreed to pay 100% of the Plaintiffs' claimed and disputed unpaid wages, overtime wages, and liquidated damages, <u>the Parties' arms' length negotiation of the claimed attorneys' fees and costs did not adversely affect the settlement amount to be paid each Plaintiff.</u>

[Doc. 32 (emphasis added)].

14.  The Joint Motion was silent as to the 45% contingency fee that Bonet & Smith would take from Mr. Padilla's unpaid wages, recovered as part of the settlement. [Doc. 32].

15.  The Joint Motion relies, in part, on the holding in *Silva v. Miller*. *See Silva v. Miller*, 307 Fed. Appx. 349 (11th Cir. 2009).

16.  On May 3, 2018, the parties attached to their Joint Motion the FLSA Settlement Agreement. [Doc. 32-1].

17.  The material portions of the FLSA Settlement Agreement state as follows:

> …[T]he following settlement checks for the total agreed settlement amount: one settlement check made payable to "Carlos Padilla" for claimed unpaid wages, unpaid overtime wages, and liquidated damages under FLSA in the amount of Sixty-Five Thousand Six Hundred Sixty Dollars and 78/100 ($65,660.78), minus applicable tax withholdings, and one check for claimed attorneys' fees and costs made payable to "Bonet & Smith, P.C." in the amount of Two Thousand Six Hundred Sixty-Six Dollars and 67/100 ($2,666.67), with no withholdings applied.

[Doc. 32-1].

18. The $2,666.67 payable to Bonet & Smith is one-third (1/3) of the total attorneys' fees ($8,000.00) approved by the Court, and paid to Bonet & Smith, for representing three plaintiffs. [Doc. 32-1].

19. The FLSA Settlement Agreement, just as the Joint Motion, was silent as to the 45% contingency fee that Bonet & Smith would receive from the recovery of Mr. Padilla's unpaid wages. [Doc. 32-1].

20. Bonet & Smith failed to disclose this to the Court. The reality is that Bonet & Smith suppressed from the Court that it intended to charge a 45% contingency fee to Mr. Padilla, which adversely affected his FLSA recovery and reduced his unpaid wage recovery. [Doc. 32-1].

21. On May 30, 2018, the parties signed an addendum to the Title VII – Discrimination settlement, where they contemplated the possibility that this Court may not approve the FLSA settlement, based in part on the additional 45% contingency fee that would be charged to Mr. Padilla. See Exhibit "C".

22.   The relevant parts on the Addendum to the Title VII – Discrimination settlement read as follows:

> Plaintiff and Bonet & Smith, P.C. agree that in the event that the court does not grant the Parties' Joint Motion to Approve the Parties' executed Fair Labor Standards Act Settlement Agreement ("Joint Motion") as written and requires instead that Defendants pay Plaintiff's counsel, Bonet & Smith, P.C., more than $2,666.67 for claimed attorneys' fees and costs as specified in Paragraph 2 of Plaintiff's Fair Labor Standards Act Release and Settlement Agreement as a condition of approval of the Joint Motion, then Bonet & Smith, P.C. will, on behalf of Plaintiff and within fourteen (14) calendar days after Defendants' payment of the new amount specified by the Court to Bonet & Smith, P.C., refund to RM Management, LLC the difference between $2,666.67 and the new amount approved and required by the Court as a condition of granting the Joint Motion and paid by Defendants. Plaintiff and Bonet & Smith, P.C. agree that this difference will be refunded to RM Management, LLC by Bonet & Smith, PC from the $78,750.00 paid by Defendants to Bonet & Smith, PC for claimed attorneys' fees and costs pursuant to the General Release Agreement, and paid to RM Management, LLC via a check from Bonet & Smith, PC with no tax withholdings applied. See Exhibit "C".

23.   On or about May 30, 2018, Defendant Redmont Properties (RM Management, LLC) issued two checks to Carlos Padilla. The first check was for $7,000.00. The gross amount was for $10,000.00, less tax withholdings of $3,000.00. The second check was for $20,589.22. The total gross amount for the two discrimination checks was $30,589.22. *See* Exhibit "D".

24.   However, Mr. Padilla didn't promptly receive payment for the Title VII - Discrimination settlement.

25.   On June 5, 2018, Mr. Padilla went to the offices of Bonet & Smith and asked for his payment for the Title VII – Discrimination settlement. Bonet & Smith refused to give Mr. Padilla the checks.

26.   On June 6, 2018, Bonet & Smith wrote to Padilla to let him know that she would not release the Title VII check until the FLSA settlement was approved. *See* Exhibit "E".

27.   Had Mr. Padilla seen and received a check for the Title VII – Discrimination promptly after Defendant Redmont Properties issued those checks, Mr. Padilla would uncover the fraudulent deductions and would have been in a position to object to the proposed FLSA settlement.

28.   On November 30, 2018, this Court entered its Memorandum Opinion approving the FLSA settlement based on the representations, and suppressions, of the lawyers to the Court. The order that followed included the following prominent portions:

> With the assistance of a mediator, the parties negotiated a settlement of the plaintiffs' FLSA claims. In exchange for a dismissal of the FLSA claims with prejudice, the defendants have agreed to settle each FLSA claim as follows: Carlos Padilla will receive $65,660.78; Jorge Ortiz will receive $60,911.85; and Demetrio Padilla will receive $9,956.59. Additionally, defendants will pay a total attorney's fee of $8,000.00." Citations to docket omitted.

> In addition to the sums recovered by the plaintiffs, the defendants have agreed to pay plaintiffs' attorney's fees and costs. In total, the defendants have agreed to pay $8,000 in fees and costs to

> Bonet & Smith, P.C. The Court reviews the attorney's fees awarded under the agreement **"to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."** *Silva*, 307 Fed. Appx. at 351 (citing *Lynn's Food*, 679 F.2d at 1352). The plaintiffs stipulate that the total amount to be paid by the defendants represents the costs and fees that they incurred to bring this action. <u>All parties stipulate that the defendants' agreement to pay these fees did not adversely affect the plaintiffs'' recovery.</u> The total fees and costs appear modest in relation to the plaintiffs' total recovery and to the amount that each plaintiff will receive. Thus, the fees and costs that the defendants will pay do not suggest that plaintiffs' counsel was pursuing her own interests at the expense of her clients during the settlement negotiations. And, based on the plaintiffs' declarations, the Court concludes that plaintiffs' counsel has been adequately compensated for her efforts.

[Doc. 35].

29.   The Memorandum Opinion cites *Silva v. Miller*. [Doc. 35].

30.   On or about December 6, 2018, Defendant Redmont Properties (RM Management, LLC) issued a check to Carlos Padilla for the net amount of $45,962.55. The gross amount was for $65,660.78, less withholdings of $19,698.23. *See* Exhibit "F".

31.   On December 14, 2018, Bonet & Smith wrote to Mr. Padilla and mailed the FLSA check to him. *See* Exhibit "G".

32.   Mr. Padilla received the FLSA check issued to him for $65,660.78, less applicable withholdings.

33.   The gross settlement for both cases totaled: $175,000.00. This amount was composed as follows: FLSA recovery: $65,660.78 and Title VII-Discrimination recovery: $109,339.22.

34.   The total amounts that Mr. Padilla received are as follows:

|  | Settlement Amount | Withheld from Redmont | Net to Mr. Padilla | Charged by Bonet & Smith |
|---|---|---|---|---|
| FLSA | $65,660.78 | $19,698.23 | $45,962.55 | $29,547.35 |
| Title VII – Discrimination | $109,339.22 | $3,000.00 | $27,589.22 | $49,202.65 |
| Total | $175,000.00 | $22,698.23 | $73,551.77 | $78,750.00 |

35.   Bonet & Smith received an additional $2,666.67 for its work on Mr. Padilla's FLSA case, bringing their total fees to $81,416.67.

36.   On January 14, 2019[2], Charline Whyte, a lawyer with Rubio Law Firm, P.C. wrote to Bonet & Smith attempting to resolve this matter, citing *Silva v. Miller* as its basis for demanding a reimbursement of the overcharged contingency fees. *See* Exhibit "H".

---

[2] The letter was mistakenly dated January 14, 2018.

37. In Bonet & Smith's response, it essentially rejected the holdings in *Silva v Miller*. This rejection of *Silva* is an affront to its own petition to have the settlement approved where it cited *Silva*. *See* Exhibit "I".

38. Since Mr. Padilla received a check for the full amount of unpaid wages paid by the Defendant Redmont Properties for the FLSA settlement - $65,660.78, it appears that Bonet & Smith took an excessive contingency fee from the Title VII – Discrimination settlement.

39. The Title VII – Discrimination settlement was for $109,339.22, but the disbursement was as follows: Bonet & Smith received $78,750.00 (or 72%) and Mr. Padilla received $30,589.22 (or 28%).

40. These percentages are contrary to the Mr. Padilla's agreement with Bonet & Smith that the contingency fee would be 45%.

41. On July 9, 2019, the undersigned filed a two-count complaint in the Circuit Court of Jefferson County for Breach of Contract and Unjust Enrichment. *Padilla v. Bonet and Smith*, 01-CV-2019-903058-JFH. *See* Exhibit "J".

42. On August 30, 2019, Bonet & Smith filed a Motion to Dismiss on several grounds. *See* Exhibit "K".

43. On September 25, 2019, a hearing on the Motion to Dismiss was conducted, where Bonet & Smith, represented by counsel, took the position that it didn't charge 72% contingency fee, but rather it charged a 45% contingency fee of

the unpaid wages recovered by Mr. Padilla on the FLSA Count and 45% of the Discrimination claim. *See* Exhibit "L".

44. The Honorable James F. Hughey denied the motion to dismiss, but also stayed the case so that the parties could bring this matter to this Court. *See* Exhibit "M".

45. The position taken by Bonet & Smith during the September 25, 2019, hearing concedes that the law firm took a 45% contingency fee from the FLSA settlement, without disclosing said action to this Court.

## Standard of Review

### A.    Federal Rule of Civil Procedure 60(b)(3)

Under Rule 60(b)(3), a district court may "relieve a party…from a final judgment" due to "fraud…, misrepresentation, or misconduct by opposing party." FED R. CIV. P. 60(B)(3). To get relief under Rule 60(b)(3), "the moving party must prove by clear and convincing evidence that the adverse party obtained the verdict though fraud, misrepresentations, or other misconduct." *Jenkins v. Anton*, 922 F.3d 1257 (11th Cir. 2019) (quoting *Waddel v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300 (11th Cir. 2003)).

### B.    Federal Rule of Civil Procedure 60(b)(6)

Rule 60(b)(6) is the "catch-all" ground for relief under Rule 60(b). *Ritter v.*

*Smith*, 811 F.2d 1398, 1400 (11th Cir. 1987). It authorizes relief for "any other reason that justifies relief" from a final judgment, order, or proceeding. FED R. CIV. P. 60(b)(6). "Rule 60(b)(6) motions must demonstrate that the circumstances are sufficiently extraordinary to warrant relief," *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006), that is, movants must show that "absent such relief, an 'extreme' and 'unexpected' hardship will result," *Griffin v. Swim-Tech Corp.,* 722 F.2d 677, 680 (11th Cir. 1984) (quoting *United States v. Swift & Co.,* 286 U.S. 106, (1932)). "Even then, whether to grant the requested relief is a matter for the district court's sound discretion." *Cano,* 435 F.3d at 1342.

### C.      Federal Rule of Civil Procedure 60(d)(3)

Rule 60(d)(3) permits a litigant to obtain relief from a final judgment or order if the movant can show "fraud on the court." FED R. CIV. P. 60(d)(3). It has long been the law of this Circuit that fraud on the court must be established by clear and convincing evidence. *Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987).

### Argument

This Court should modify its' Memorandum Opinion [Doc. 35] based on either Rule 60(b)(3), 60(b)(6), or 60(d)(3). Bonet & Smith did not disclose that it intended to receive – and did later receive – a contingency fee from Mr. Padilla's FLSA recovery. Bonet and Smith suppressed the FLSA contingency fee from the client to prevent his objection prior to court approval. Bonet and Smith also

suppressed the FLSA contingency fee from the Court when the Parties filed the Joint Motion to approve the FLSA settlement. The FLSA contingency fee would have been significant to the client on his decision to proceed with the settlement. The FLSA contingency fee would also have been a key consideration by the Court in scrutinizing the settlement under *Silva*. Unfortunately, neither Mr. Padilla, nor the Court were allowed to consider the FLSA contingency fee and on that bases, the Memorandum Opinion should be set aside or modified.

1.  **Bonet & Smith circumvented Congress' intent through the FLSA by attempting to enforce a contingency contract, which reduced Mr. Padilla's earned wages.**

The Supreme Court of the United States has deemed actions similar to those by Bonet & Smith impermissible and against public policy. *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). In *Barrentine*, the court stated that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purpose' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (quoting *O'Neil*, 324 U.S. at 697).

By charging an FLSA contingency fee, Bonet & Smith is contracting away Mr. Padilla's rights to receive the full compensation (wages) owed to him. Indeed, by charging a contingency fee on Mr. Padilla's wages, he does not receive all of the wages owed to him. Congress has set out a method by which attorneys, just like

14

Bonet & Smith, are paid in FLSA cases. The method allows the attorney representing the employee to negotiate its fees, directly with the employer (defendant) or may request fees from the court, using the Lodestar method. In fact, Bonet & Smith was paid, using that precise method. As set out in paragraph 2 of the FLSA Agreement [Doc. 32-1], Bonet & Smith was paid by the Redmont Properties Defendant directly. While the *Barrentine* case discusses employees contracting away their rights with their employers, the FLSA's protection should be construed broadly and applies to plaintiff's lawyers as well as to the employers. The congressional intent is to protect the employee so that they will retain the wages that they earned after consideration of attorney's fees.

Bonet & Smith further represented to this Court, in their Joint Motion to for Approval of FLSA Settlement, that Mr. Padilla would receive 100% of his wages. "As demonstrated by the fact that Defendants have agreed to pay 100% of the Plaintiffs' claimed and disputed unpaid wages, overtime wages, and liquidated damages, the Parties' arm length negotiation of the claimed attorneys' fees and costs did not adversely affect the settlement amount to be paid each Plaintiff." [Doc. 32 (emphasis added)].

The Fourth Circuit Court of Appeals, interpreting Congress' mandate in passing the FLSA legislation, opined regarding who should pay for attorneys' fees

and stated that an employee should recover his wages, without incurring penalties.

*See Maddrix v. Dize*, 153 F.2d 274, 275, (4th Cir. 1946). The Fourth Circuit held that

> We think that the power of the court to allow a reasonable attorney's fee for additional services rendered in the appellate courts was not restricted by the mandate. The purpose of the statute is not open to doubt; not only does it empower the court to render judgment for the amount due the employee for his hours of labor at the statutory rate, and to include in the judgment an equal amount of liquidated damages, but it expressly directs that 'the court in such an action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.' Obviously, Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs.

*Maddrix*, 153 F.2d at 275. To that end, this Court should find that the FLSA contingency fee was improper and against the congressional intent of the FLSA and case law. In so finding, this Court should either set aside the Memorandum Opinion [Doc. 35] or modify it so that Mr. Padilla receives his full compensation, including fees and expenses related to this Motion.

**2.     Bonet & Smith charged unreasonable attorney's fees and had a conflict of interest with Mr. Padilla, when it took money from Padilla's recovery for unpaid wages.**

The district court must "review…the reasonableness of counsel's fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."

*Silva v. Miller*, 3017 Fed. App'x 349, 351 (11th Cir. 2009) (unpublished decision).[3] The Court in this case reviewed the settlement agreement between Mr. Padilla and Defendant Redmont Properties. [Doc. 35]. The settlement agreement explicitly stated that Bonet & Smith would receive $2,666.67 as payment for her "claimed attorneys' fees and costs," made payable to Bonet & Smith. [Doc. 32].

Mr. Padilla signed both the FLSA agreement and the Title VII-Discrimination agreement on the same day, April 26, 2018. The lawyers, including Bonet & Smith, had prepared, reviewed, and agreed on the terms of those agreements prior to the date when Mr. Padilla executed the documents. By April 26, 2018, Bonet & Smith knew of the terms of both agreements. The Title VII-Discrimination agreement explicitly states that Bonet & Smith will receive $78,750.00, which is equal to 45% of the total settlement for both the FLSA and the Title VII-Discrimination cases. Even though Bonet & Smith knew on April 26, 2018 that she would collect fees from Mr. Padilla's FLSA recovery, attorney Vicenta Bonet-Smith failed to disclose that deduction on her Joint Motion to approve settlement, which was filed on May 3, 2018. [Doc. 32]. The suppression of this information precluded this Court from scrutinizing whether a conflict existed between Bonet & Smith and Mr. Padilla. This

---

[3] Although, *Silva v. Miller* is an unpublished decision, it has been cited over 1,000 times, mainly within the 11th Circuit.

conflict of interest analysis is precisely what the *Silva* decision wanted judges to oversee.

In the seminal case of *Lynn's Food Stores, Inc v. United States*, the Eleventh Circuit stated that an employee may bring a direct action against his employer. *Lynn's Food Stores, Inc v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (quoting *Schulte, Inc. v. Gangi*, 328 U.S. 108 (1947)).  "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores,* 679 F.2d at 1353 (emphasis added) (quoting *Gangi*, 328 U.S. 108). However, in this case, this Court was not able to consider the additional contingency fee, before approving the FLSA settlement, and was therefore unable to 'scrutinize the settlement for fairness.'

The fee charged by Bonet & Smith was unreasonable. The Redmont Defendants agreed to pay $65,660.78 for unpaid wages. However, they withheld $19,698.23 for taxes, leaving Mr. Padilla with $45,962.55. Bonet & Smith charged 45% of the gross amount, or $29,547.35, which yielded a net recovery for Mr. Padilla of $16,415.20. Bonet & Smith received almost twice as much as Mr. Padilla. Indeed, the FLSA contingency fee was improper and against the congressional intent of the FLSA and case law and this Court should either set aside the Memorandum Opinion

[Doc. 35] or modify it so that Mr. Padilla receives his full compensation, including fees and expenses related to this Motion.

**3.     Bonet & Smith proposed to Mr. Padilla an impermissible contingency contract or "side deal," which was not disclosed to the court.**

An agreement to settle an FLSA case must contain full and adequate disclosures of the terms of the settlement and represent that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff. Bonet & Smith sought an approval from the court, without revealing the existence of a contingency fee agreement, which for all practical purposes was a "side deal." Side deals that undermine the purposes of the FLSA have been discouraged and not permitted.

Bonet & Smith will likely argue that Mr. Padilla voluntarily entered into a contract with Bonet & Smith. However, a similar agreement was discussed in the *Lynn's Food Store* case. "Lynn's offered for the record a transcript of the settlement "negotiations" between its representative and its employees. The transcript was offered as proof that the employees were not "pressured" to sign the agreements, that the settlements were strictly "voluntary." *Lynn's Food Stores,* 679 F.2d at 1354. The Court concluded that "[i]n sum, the transcript is illustrative of the many harms which may occur when employers are allowed to "bargain" with their employees over minimum wages and overtime compensation and <u>convinces us of the necessity of a</u>

rule to prohibit such invidious practices." *Lynn's Food Stores,* 679 F.2d at 1355. (emphases added).

The FLSA provides Mr. Padilla and all employees in the United States protection from their employers and their own attorneys so that they can keep 100% of their hard-earned wages. Bonet & Smith's side deal prevented the Court from considering the fairness of it in context of the total settlement. The Court should find that the side deal was improper and against the congressional intent of the FLSA and case law. In so finding, this Court should either set aside the Memorandum Opinion [Doc. 35] or modify it so that Mr. Padilla receives his full compensation, including fees and expenses related to this Motion.

## PRAYER FOR RELIEF

Mr. Padilla prays that this Honorable Court will grant the following relief:

1. Modify the Final Order entered on November 30, 2018 [Doc. 35.];

2. Find that Bonet & Smith improperly charged Mr. Padilla a 45% contingency fee, contrary to well-settled case law;

3. Order that Bonet & Smith reimburse Mr. Padilla the amount charged as a contingency fee;

4. Order Bonet & Smith to pay interest on the amount improperly withheld from Mr. Padilla from the November 30, 2018, the date of the Final Order, to the present;

5.  Order Bonet & Smith to pay reasonable attorneys' fees to Rubio Law Firm, P.C. for time and expense incurred in filing the lawsuit in State Court and the time spent in presenting this motion to the Court.

6.  Sanction Bonet & Smith, as this Court deems appropriate; and

7.  Any other relief that this Court deems appropriate.

8.  In the alternative, rule that the additional attorneys' fees were not taken from the FLSA settlement, allowing the State case to proceed.

Respectfully Submitted on December 2, 2019,

**/s/ _Sigfredo Rubio_**
Sigfredo Rubio (ASB-5403-D62R)
Attorney for Mr. Carlos Padilla

**<u>OF COUNSEL:</u>**

Rubio Law Firm, P.C.
438 Carr Avenue
Suite, 1
Birmingham, AL 35209
Telephone:   (205) 443-7858
Facsimile:   (205) 443-7853
frubio@rubiofirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and as indicated by U.S. Mail and/or email correspondence which will send notification of such filing to all counsel of record on this the 2nd day of December 2019.

**Vicenta Bonet Smith**
VICENTA BONET-SMITH, ESQ.
BONET & SMITH, P.C.
3499 Independence Dr.
Birmingham, AL 35209
Telephone: (205) 870-2222
Facsimile: (205) 870-3331
Vicenta@bonetsmith.com

**David L. Warren, Jr. Esq.**
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
420 20th Street North,
Suite 1900
Birmingham, AL 35203
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
David.warren@ogletreedeakins.com